UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:21-CR-00331-HEA-SRW ) |
| JESUS PANTOJA, | ) ) |
| Defendant. | ) ) |

**GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the defendant, Jesus PANTOJA, represented by defense counsel Daniel A. Juengel, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any Governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to the lesser included offense in Count I (conspiracy to distribute and possess with the intent to distribute a mixture or substance containing methamphetamine), a lesser-included offense fully encompassed within Count One of the

1

Indictment, the Government agrees to mover for the dismissal as to Count II at the time of sentencing. Additionally, the United States agrees that no further federal prosecution will be brought in this District relative to the underlying facts supporting the charges herein, of which the United States is aware at this time.

The parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual basis for the request.

The defendant also agrees, pursuant to the guilty plea to Count I, to forfeit to the United States all property subject to forfeiture under the applicable statutes.

### 3. ELEMENTS:

As to the lesser included offense in Count I, the defendant admits to knowingly violating Title 21, United States Code, Sections 841(a)(1) and 846, within the Eastern District of Missouri, and admits there is a factual basis for the plea, and further, fully understands that the elements of the crime of Conspiracy to Distribute and Possess with the Intent Distribute Methamphetamine are:

*One*, beginning at a time unknown, but including December 2017 through an unknown date, two or more persons reached an agreement or came to an understanding to distribute and

possess with the intent to distribute a mixture or substance containing a detectable amount of fentanyl, methamphetamine ("Ice") and a mixture or substance containing a detectable amount of heroin, Schedule I and II controlled substances;

*Two*, the defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect; and

*Three*, at the time the defendant joined in the agreement or understanding, he knew the purpose of the agreement or understanding.

### 4. FACTS:

The parties agree that the facts in this case are as follows and that the United States would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Beginning in late 2017 and extending to 2019, The United States Postal Inspection Service (USPIS) identified a pattern of packages being mailed from St. Louis, Missouri to California which were suspected to contain drug proceeds being remitted to a drug source of supply in California. USPIS identified a large volume of outbound mailings to various locations in Southern California. The majority were sent Priority mail express and share similar characteristics. Further, the "signature required" box was not checked, meaning that the packages can be tracked without affirmative acceptance by an individual receiver. The large volume outbound packages showed a pattern of being labeled with only a small group of sender names which were fictious.

3

On March 14, 2019, USPIS in San Diego notified USPIS in St. Louis that a package a package containing narcotics was in transit to St. Louis. The package was located at a distribution center in St. Louis and a warrant was obtained. The shipment contained another box inside which was heavily taped. Inside that box was a white bucket, also heavily taped. Inside the bucket were thirteen bundles heavily wrapped in plastic. The bundles contained a total of 7lbs 10 oz. of methamphetamine. While this is an amount that the government believes the drug trafficking organization is responsible for, there is not enough evidence against this defendant to hold him accountable for this amount.

Concurrent with the USPIS investigation, FBI was conducting controlled purchases of methamphetamine from co-defendants Bryan BYRD and Demond DOYLE, street-level drug distributor in the greater St. Louis region.

On March 18, 2019, Investigators attempted a controlled delivery to 8556 Jane Ave. in St. Louis. The investigative team was limited in personnel that afternoon, so the package was retrieved by investigators and terminated the operation but then observed Demond DOYLE arrive to the residence and look around the front porch. Later, a latent fingerprint exam was done on the packaging from this shipment. Seven (7) fingerprints from Jesus PANTOJA were found on the packaging.

On March 22, 2019, investigators from the Southwest Border Crimes Task Force advised that PANTOJA mailed a package from San Ysidro, California, to 1607 Faris Ave in St. Louis, Missouri. PANTOJA paid in cash to mail the package. USPIS in St. Louis intercepted the package prior to delivery and conducted a K-9 sniff of the package which was positive for narcotics. A controlled delivery operation on March 25, 2019 revealed Demond DOYLE picking

4

up the package and then meeting with co-defendant Michael BAILEY at 8556 Jane Ave. Investigators observed BAILEY and DOYLE conduct countersurveillance while the package was inside the house. Later, DOYLE discarded the shipment packaging into a dumpster which was then retrieved by investigators and sent to the USPIS lab for latent prints. Six (6) latent prints matching those of Jesus PANTJOA were found on the adhesive side of the brown tape removed from the inner brown cardboard box and two (2) prints were found on the adhesive side of the exterior brown tape from the outer brown box which matched Michael BAILEY.

On April 22, 2019, USPIS inspectors intercepted a package at a distribution center in St. Louis. The package had a hand-written label, was heavily taped, had a strong odor of a masking agent and was very dense. The package was addressed to fictious names at 4638 Idaho Ave in St. Louis. A search warrant was obtained for the package. A search of the package revealed a box within the outer box. The inner box was also taped shut. Within the 2nd box was a white bucket taped shut. The bucket contained 12 bundles consistent with controlled substance packages. The controlled delivery operation resulted in the arrest of co-defendant Brenda JACKS.

Later, the suspected drugs and packaging were sent to the USPIS lab to test and check for latent fingerprints. The drugs amounted to 2,197 grams of methamphetamine and 497 grams of fentanyl. The USPIS Forensic Lab additionally located the fingerprints of Jesus PANTOJA on the package and submitted evidence. One of PANTOJA's fingerprints were found on the exterior of the brown carboard box. Five of PANTOJA's fingerprints were found on the adhesive side of the clear tape removed from the exterior of the brown cardboard box. Two of PANTOJA's fingerprints were found on the adhesive side of the clear tape removed from the white bucket that contained the fentanyl and methamphetamine.

Based on the totality of the evidence, including relevant conduct, the parties agree that PANTOJA is accountable for at least 2,197 grams of methamphetamine and 497 grams of fentanyl. This results in 3,000 KG but less than 10,000 KG of Converted Drug Weight.

Expert testimony in the event of trial would establish that this amount of methamphetamine and fentanyl is inconsistent with amounts possessed purely for personal use and are consistent with amounts possessed for distribution.

**5. STATUTORY PENALTIES:**

The defendant fully understands that the maximum possible penalty provided by law for the felony crime to which the defendant is pleading guilty is imprisonment of not more than twenty (20) years, a fine of not more than $1,000,000, or both such imprisonment and fine. The Court shall also impose a period of supervised release of at least three (3) years.

**6. U.S. SENTENCING GUIDELINES: 2018 MANUAL:**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

**a. Chapter 2 Offense Conduct:**

**(1) Base Offense Level:**

**(A.) Drug Quantity:** The parties agree and recommend that the quantity of controlled substance for which the defendant is accountable, including relevant conduct, is more than 3,000 KG but less than 10,000 KG of converted drug weight, resulting in a base offense level of **32** pursuant to U.S.S.G. §2D1.1(c)(4).

6

**(B.) Specific Offense Characteristics:** None

**(2) Chapter 3 Adjustments:**

**(A.) Acceptance of Responsibility:** The parties agree that three (3) levels should be deducted pursuant to Section 3E1.1(a) and (b) because the defendant has clearly demonstrated acceptance of responsibility and timely notified the United States of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea, the United States receives new evidence of statements or conduct by the defendant, which it believes are inconsistent with the defendant's eligibility for this deduction, the United States may present said evidence to the Court and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**(B.) Other Adjustments:** None

**b. Estimated Total Offense Level:** The parties estimate that the Total Offense Level is **29**. However, if defendant is a Career Offender, both the base offense level and Criminal History Category are subject to change. Depending on the underlying offense and defendant's criminal history, defendant could be a Career Offender pursuant to Section 4B1.1. If the Court finds defendant is a Career Offender, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI. Defendant has discussed these possibilities with defense counsel. Both parties reserve the right to argue that the defendant is or is not a Career Offender.

**c. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the

Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**d. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

### 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** In the event the Court accepts the plea and, after determining a Sentencing Guidelines range, sentences the Defendant within or below that range, then, as part of this agreement, the Defendant hereby waives all rights to appeal all sentencing issues other than Criminal History. Similarly, the United States hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea,

8

determines a Sentencing Guidelines range, and sentences the Defendant within or above that range.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the United States.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**

Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the

9

defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision. The defendant agrees that any fine imposed by the Court will be due and payable immediately.

**g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the

opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. The defendant consents that the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the Government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives her rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the United States to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the

attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the United States' evidence and discussed the United States' case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas that the defendant has requested relative to the United States' case and any defenses.

The defendant understands the guilty plea could impact the defendant's immigration status or result in deportation if the defendant is not a United States Citizen. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the guilty plea.

The defendant understands this guilty plea impacts certain rights, such as the right to possess a firearm and/or ammunition. The defendant understands he is pleading guilty to a crime punishable by imprisonment for a term exceeding one year, and pursuant to Title 18, United

12

States Code, Section 922(g), it is unlawful for any person convicted of such a crime to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition, which has been shipped or transported in interstate or foreign commerce.

### 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Department of Justice attorney, concerning any plea to be entered in this case. The defendant has fully discussed the terms and conditions of the offer with counsel, and the defendant understands and agrees to the same. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

### 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if the defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The United

13

States may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

### 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement, which deal with charges the United States agrees to dismiss or not to bring.

2/14/23
Date

NAUMAN WADALAWALA
Assistant United States Attorney

2-14-23
Date

JESUS PANTOJA
Defendant

2/14/23
Date

DANIEL A. JUENGEL
Attorney for Defendant